

**JD**

$350.00

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DARNELL C. JACKSON                     :
29 S. Farragut Street                  :       CIVIL ACTION
Philadelphia, PA 19139                 :
                                       :       NO.:
        vs.                            :
                                       :       **11    4344**
CITY OF PHILADELPHIA,                  :
1515 Arch Street, 14th Floor           :
Philadelphia, PA 19102                 :       **FILED**
        and                            :
POLICE OFFICER DEONA  S. CARTER        :       JUL   2011
18th Police District                   :
5510 Pine Street                       :  By:_____ Dep. Clerk
Philadelphia, PA 19143                 :

<u>**CIVIL ACTION COMPLAINT**</u>

Plaintiff, Darnell C. Jackson, by and through his attorneys, Villari, Lentz & Lynam, LLC,

says by way of Complaint against Defendants, as follows:

**I.     <u>PARTIES</u>**

1.      Plaintiff, Darnell C. Jackson, is an adult male, sui juris, and citizen of the

Commonwealth of Pennsylvania, with an address of 29 S. Farragut Street, Philadelphia, PA

19139.

2.      Upon information and belief, Defendant, City of Philadelphia, is a municipality

and/or jural entity organized and existing under the laws of Pennsylvania, with a business

address at 1515 Arch Street, 14th Floor, Philadelphia, PA 19102.

3.      Upon information and belief, Defendant, Police Officer Deona S. Carter

(hereinafter "Miss. Carter"), is an adult female, sui juris, and citizen of the Commonwealth of

Pennsylvania and a Philadelphia Police Officer with the 18th Police District with a business

- 1 -

address of 5510 Pine Street, Philadelphia, PA 19143.

4.      At all times relevant hereto, Defendant, Miss Carter, who is being sued in both her individual and official capacities, acted by and through her actual or apparent employees, servants and/or agents who were in the course and scope of their actual or apparent employment, service and/or agency with Defendant, City of Philadelphia.

5.      At all times relevant hereto, the City of Philadelphia was acting under color of state law and had the responsibility for managing its officers, and employees, training, disciplining, and setting official policy for the Police Department, its employees, and Plaintiff's custodians and apprehenders.

6.      At all times relevant hereto, Defendant Carter was acting under color of state law and had the responsibility of observing and protecting the constitutional rights of Plaintiff, Darnell Jackson.

## II.     JURISDICTION

7.      This Honorable Court has original jurisdiction over this matter pursuant to 28 U.S.C.A. § 1331, as Plaintiff seeks relief in accordance with  42 U.S.C. §1983.

8.      This Honorable Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.A. § 1367.

## III.    FACTS

9.      Darnell C. Jackson was, at all times material hereto, a twenty one year old college student who worked overnight at UPS loading trucks to pay his way through college.

10.     Darnell C. Jackson, whose father died of lung cancer when Darnell was only 12, resided with his mother, at all times material hereto, at 29 S. Farragut Street in Philadelphia.

- 2 -

11.    During the early morning hours of May 17, 2010, Mr. Jackson left his home to go to work at UPS, where he was due in by 3:30 p.m.

12.    He arrived at the intersection of Farragut St. and Walnut Street in time to make his bus, which was due at the stop at 2:36 a.m.

13.    Mr. Jackson was wearing a black zipper down sweatshirt, a UPS shirt, black cargo pants with a UPS water bottle in a side pocket and work boots.

14.    While minding his own business waiting for the bus and while speaking on the phone with hid girlfriend, Miss Carter pulled into the Sunoco gas station at that intersection, exited her marked police vehicle and yelled to Mr. Jackson to come to her and not to get on the bus.

15.    Miss Carter was responding to a call of a robbery of a taxi cab driver.  The description of the alleged assailant did not match the appearance of Mr. Jackson in that the actual assailant was arrested later that night wearing a white t-shirt and jeans.

16.    Mr. Jackson was taken off guard and confused by why Miss Carter would be talking to him.  He asked her why she was trying to stop him as he was on his way to work and would be late if he didn't catch this bus.

17.    By the time Miss Carter approached Mr. Jackson he had already taken out his UPS Identification and his non-driver's license state identification card and had them in his hand when she approached.  He attempted to give them to her but she violently smacked them out of his hand and onto the ground and told him she didn't ask for that.

18.    Miss Carter then began to grab him and take him to the ground for no reason at all while he kept asking her why she was stopping him.  Back up officers arrived and they stepped

on the back of his neck and back while Miss Carter put handcuffs on him and put him in the back of her patrol car.

19.    Mr. Jackson was able to hold on to his telephone, even after being cuffed and placed in the police car.

20.    Mr. Jackson's girlfriend remained on the telephone and listened to the entire interaction between Mr. Jackson and Miss Carter.

21.    Mr. Jackson's mother was contacted by another witness who lives in the neighborhood and knows the Jackson family.

22.    Upon Mrs. Jackson's receipt of the news that her son was being arrested, she went to the intersection and approached a male officer who arrived on scene while Miss Carter was taking Mr. Jackson to the ground and assaulting without cause.  She asked the male officer why her son is being arrested, protesting that he is going to work, is a good boy and is in school.  The male officer calmed her down and said he was not being arrested but you have to talk to Miss Carter.  The male officer made a point of telling the mother that he did not hit her son.

23.    Mrs. Jackson then approached Miss Carter while she sat in her patrol car with Mr. Jackson in the back seat.  Mrs. Jackson asked Officer Carter why her son was in custody and informed Miss Carter that her son was on his way to work, that he is a good boy and is in college.

24.    Miss Carter sarcastically replied that Mr. Jackson was a grown man and that she would have to wait for his phone call from the station.  She then sped off.

25.    Mr. Jackson was arrested by Miss Carter for aggravated assault, simple assault, REAP and resisting arrest despite the complete absence of misconduct on his behalf.

- 4 -

26.     It was only on the way to the police station, while Mr. Jackson sat handcuffed in the police car, that Mr. Jackson was initially first made aware that he was taken into custody regarding a taxi cab robbery.

27.     As a result of Miss Carter's diligent efforts to focus police department resources on detaining, arresting, assaulting and the false charging of an innocent college student with a felony, the very Sunoco gas station where Mr. Jackson was arrested was then robbed, shortly after Miss Carter left, allegedly by the same individual that had robbed the taxi driver.

28.     Notwithstanding the fact that the man who had allegedly robbed the taxi and the gas station was arrested and processed at the same police station as Mr. Jackson, Mr. Jackson remained in jail for thirty-six hours and had to post twelve hundred dollars ($1,200.00) to make bail.

29.     Mr. Jackson diligently met with his public defender and attended four (4) scheduled preliminary hearings at which Miss Carter was to testify and a judge would decide which, if any, of the charges would be held over for trial.

30.     Miss Carter failed to appear for any of the four scheduled preliminary hearings. The charges were dismissed by a Philadelphia Municipal Court Judge when Miss Carter failed to show up for the fourth and final scheduled preliminary hearing.

31.     Mr. Jackson was fired from his job at UPS and now has a criminal arrest record, thereby requiring him to retain a criminal attorney to pursue an expungment.

32.     At all times relevant hereto, Miss Carter acted under color of state law and with deliberate and/or reckless indifference to Mr. Jackson's constitutional rights.

33.     At all times material hereto, Miss Carter had a history of behavior, which was

known to the Philadelphia Police Department, consisting of the following:

    a.     A twenty (20) day suspension for two counts of Conduct Unbecoming an Officer for providing misleading information to police in an attempt to have an innocent person falsely arrested for assault after Miss Carter started a physical confrontation by punching a citizen, as was witnessed by another police officer;

    b.     Fourteen reported uses of force;

    c.     Eleven complaints filed by citizens against Officer Carter;

    d.     An Official Reprimand for Neglect of Duty;

    e.     An allegation that Miss Carter had a relationship with a known drug dealer in 2005;

    f.     Allegations that Miss Carter had a relationship and smoked marijuana with a convicted felon with an open criminal case and an outstanding warrant for his arrest.  It was further alleged that, following a 1:50 a.m. bar fight involving Miss Carter and the aforementioned wanted felon, she blocked in the vehicle he was operating and smashed the windshield with her police night stick.

## COUNT I
## CIVIL RIGHTS VIOLATIONS
## DARNELL JACKSON V. ALL DEFENDANTS

34.    Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

35.    The conduct of the defendants as set forth above, acting under color of state law, was intended to harm Mr. Jackson and/or was recklessly and deliberately indifferent to the safety, bodily integrity, well-being, privacy and liberty of Mr. Jackson, and was committed in

    e.     intentionally veiling and failing to report the incident as it occurred;

conscious disregard of the substantial and/or unjustifiable risk of causing harm to members of the public and to Mr. Jackson, and was so egregious as to shock the conscience.

36.     The conduct of the defendants as set forth above violated Mr. Jackson's constitutional rights to be free from unreasonable searches and seizures, rights to bodily integrity, rights to care in custody, rights to be free from cruel and unusual punishment, rights to privacy, right to liberty, right to be free from false imprisonment and to substantive and procedural due process, as guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, and as remediable pursuant to 42 U.S.C. §1983.

37.     The actions of the Defendants, as described above, were undertaken in bad faith and with a deliberate indifference to and callous disregard of Plaintiff's constitutional rights in that the Defendants:

    a.     physically assaulted Plaintiff when it was clear to any reasonable officer that there was no probable cause for arrest;

    b.     assaulted Mr. Jackson and took him into custody when there was absolutely no trustworthy or fair probability that he had committed a crime;

    c.     conspired in callous disregard for the safety of the Plaintiff to cover up the assault by fabricating a story that Plaintiff had assaulted a police officer and thereby deprived Mr. Jackson of his constitutional right to access to the courts;

    d.     violated Plaintiff's substantive due process rights;

    e.     intentionally veiling and failing to report the incident as it occurred;

    f.     intentionally and recklessly exposing Plaintiff to a state created danger;

    g.     intentionally and recklessly failing to memorialize and/or file the proper incident

reports in accordance with State law and administrative regulations;

h.   recklessly fostering abuse and misconduct by and between police officers that would foreseeably lead to more misconduct against innocent citizens;

i.   exhibiting a willful disregard for the safety of Plaintiff;

j.   used its authority to conceive, draft, implement and enforce policies that created an opportunity for danger in the form of excessive and unwarranted uses of force by police officers;

k.   had in force policies and customs that permitted the assault and false arrest of an innocent citizen; and

l.   wasting the time and resources of both the Plaintiff and the City of Philadelphia to process fictitious charges against Plaintiff.

38.   As a direct result of the Defendants' actions and/or failure to act, Plaintiff, has suffered injuries which include, but are not limited to, the following: false arrest; detention against his will without legitimate basis; loss of personal freedom; fear and anxiety; anxiety attacks; sleeplessness; severe emotional distress; damage to the nerves and nervous system; numerous contusions; emotional pain and suffering; loss of earnings and earning potential; injury to his reputation as a citizen; embarrassment; psychological injury; loss of time dedicated to defending the frivolous charges; as well as other permanent physical and psychological disorders that will continue to have an adverse impact on him for the foreseeable future including other ailments that Plaintiff's treating health care providers may diagnose.

39.   As a direct result of the Defendants' actions and/or failure to act, Plaintiff, has or may suffer a severe loss of earnings and impairment of earning power and capacity.

- 8 -

40.     As a direct result of the Defendants' actions and/or failure to act, Plaintiff, has suffered medically determinable physical and/or mental impairments which prevent the Plaintiff from performing all or substantially all of the material acts and duties which constituted the Plaintiff's usual and customary activities prior to the accident.

41.     As a direct result of the Defendants' actions and/or failure to act Plaintiff, has or may hereafter incur other financial expenses which do or may exceed amounts which Plaintiff may otherwise be entitled to recover.

42.     As a direct result of the Defendants' actions and/or failure to act, Plaintiff, has suffered severe physical pain, mental anguish and humiliation, and may continue to suffer same for an indefinite time in the future.

WHEREFORE, Plaintiff demands punitive, compensatory and special damages, jointly and severally, together with attorney fees and costs, pre and post judgment interest.  Plaintiff hereby certifies pursuant to Local Civil Rule 53.2 §3(c)(2) that the value of Plaintiffs claim is in excess of $150,000.00.

### COUNT II
### NEGLIGENCE
### MR. JACKSON V.  THE CITY OF PHILADELPHIA

43.     Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

44.     Miss Carter engaged in willful misconduct in that she desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied.

45.     Pursuant to 42 Pa.C.S. § 8550, the willful misconduct of Miss Carter serves to

- 9 -

waive any immunity or limitation on damages that the municipal defendants would have otherwise enjoyed under the Political Subdivision Tort Claims Act.

46.     The negligence, carelessness and recklessness of the Defendant includes inter alia, the following:

a)     failing to properly train its officers on the appropriate use of force;

b)     failure to properly train its officers on the need to establish probable cause prior to arrest;

c)     failure to properly supervise the officers that assaulted Mr. Jackson;

d)     failure to draft, implement and enforce policies that would serve to eliminate the use of excessive force;

e)     failure to draft, implement and enforce policies that would serve to prevent the falsification of reports by its officers;

f)     failure to comply with police standards;

g)     failure to adequately train its workforce; and

h)     is otherwise negligent in law and in fact.

47.     As a direct result of the Defendants' actions and/or failure to act, Plaintiff, has suffered injuries which include, but are not limited to, the following: false arrest; detention against his will without legitimate basis; loss of personal freedom; fear and anxiety; anxiety attacks; sleeplessness; severe emotional distress; damage to nerves and nervous system; numerous contusions; emotional pain and suffering; loss of earnings and earning potential; injury to his reputation as a citizen; embarrassment; psychological injury; loss of time dedicated to defending the frivolous charges; as well as other permanent physical and psychological disorders

that will continue to have an adverse impact on him for the foreseeable future including other ailments that Plaintiff's treating health care providers may diagnose.

48.    As a direct result of the Defendants' actions and/or failure to act, Plaintiff, has or may suffer a severe loss of earnings and impairment of earning power and capacity.

49.    As a direct result of the Defendants' actions and/or failure to act, Plaintiff, has suffered medically determinable physical and/or mental impairments which prevent the Plaintiff from performing all or substantially all of the material acts and duties which constituted the Plaintiff's usual and customary activities prior to the accident.

50.    As a direct result of the Defendants' actions and/or failure to act Plaintiff, has or may hereafter incur other financial expenses which do or may exceed amounts which Plaintiff may otherwise be entitled to recover.

51.    As a direct result of the Defendants' actions and/or failure to act, Plaintiff, has suffered severe physical pain, mental anguish and humiliation, and may continue to suffer same for an indefinite time in the future.

WHEREFORE, Plaintiff demands punitive, compensatory and special damages, jointly and severally, together with attorney fees and costs, pre and post judgment interest.  Plaintiff hereby certifies pursuant to Local Civil Rule 53.2 §3(c)(2) that the value of Plaintiffs claim is in excess of $150,000.00.

### COUNT III
### ASSAULT, BATTERY AND FALSE IMPRISONMENT
### MR. JACKSON V.  MISS CARTER

52.    Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

- 11 -

53.     Miss Carter engaged in willful misconduct in that she desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied.

54.     Pursuant to 42 Pa.C.S. § 8550, the willful misconduct of Miss Carter serves to waive any immunity or limitation on damages that the municipal defendants would have otherwise enjoyed under the Political Subdivision Tort Claims Act.

55.     Plaintiff hereby alleges that the aforementioned actions by Miss Carter constituted the torts of assault and battery.

56.     Plaintiff hereby alleges that the aforementioned actions by Miss Carter constituted the false imprisonment of Plaintiff in that Miss Carter intended to confine the Plaintiff within boundaries fixed by the Officer; the Officer's acts directly or indirectly resulted in such a confinement; and that the Plaintiff was conscious of the confinement and was harmed by it.

57.     As a direct result of the Defendants' actions and/or failure to act, Plaintiff, has suffered injuries which include, but are not limited to, the following: false arrest; detention against his will without legitimate basis; loss of personal freedom; fear and anxiety; anxiety attacks; sleeplessness; severe emotional distress; damage to nerves and nervous system; numerous contusions; emotional pain and suffering; loss of earnings and earning potential; injury to his reputation as a citizen; embarrassment; psychological injury; loss of time dedicated to defending the frivolous charges; as well as other permanent physical and psychological disorders that will continue to have an adverse impact on him for the foreseeable future including other ailments that Plaintiff's treating health care providers may diagnose.

58.     As a direct result of the Defendants' actions and/or failure to act, Plaintiff, has or

may suffer a severe loss of earnings and impairment of earning power and capacity.

59.     As a direct result of the Defendants' actions and/or failure to act, Plaintiff, has suffered medically determinable physical and/or mental impairment which prevents the Plaintiff from performing all or substantially all of the material acts and duties which constituted the Plaintiff's usual and customary activities prior to the accident.

60.     As a direct result of the Defendants' actions and/or failure to act Plaintiff, has or may hereafter incur other financial expenses which do or may exceed amounts which Plaintiff may otherwise be entitled to recover.

61.     As a direct result of the Defendants' actions and/or failure to act, Plaintiff, has suffered severe physical pain, mental anguish and humiliation, and may continue to suffer same for an indefinite time in the future.

WHEREFORE, Plaintiff demands punitive, compensatory and special damages, jointly and severally, together with attorney fees and costs, pre and post judgment interest.  Plaintiff hereby certifies pursuant to Local Civil Rule 53.2 §3(c)(2) that the value of Plaintiffs claim is in excess of $150,000.00.

## V.    JURY DEMAND

Plaintiff hereby demands a trial by jury as to each count and each Defendant.

VILLARI, LENTZ & LYNAM, LLC

Thomas A. Lynam, III, Esquire
Leonard G. Villari, Esquire
Attorney ID #: 83817/68844
1600 Market Street, Suite 1800
Philadelphia, PA 19103

- 13 -

Phone: (215) 568-1990
Fax: (215) 568-9920
E-mail: tlynam@vll-law.com
         lgvillari@vll-law.com
Attorneys for Plaintiffs

Dated: July 6, 2011